UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:23-cr-00177-DC-1 |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS |
| BRADLEY EARL REGER, | (Doc. Nos. 144, 146, 148) |
| Defendant. | |

This matter came before the court on July 1, 2026, for a hearing on Defendant's motions to suppress evidence obtained from multiple search warrants. (Doc. Nos. 144, 146, 148.) Attorneys Kresta Daly and Tasha Chalfant appeared on behalf of Defendant. Assistant U.S. Attorneys Jessica Delaney and Roger Yang appeared on behalf of the Government. For the reasons stated below, the court will deny Defendant's motions to suppress.

## BACKGROUND

### A.     Factual Background

On October 18, 2022, an employee from the Church of the Nazarene, in Kansas, reported Defendant to Lassen County Child Protective Services ("CPS") and to the California Board of Nursing within the California Department of Consumer Affairs ("DCA"), for possible sexual abuse of minors. (Doc. No. 179-2 at 5.) The Church of the Nazarene reported Defendant after conducting its own internal investigation into two separate complaints alleging that Defendant

1

had sexually abused at least two minor victims under the guise of medical treatment, one in 2018 and the other from 2016 through 2020. (*Id.* at 5–6.) As part of the internal investigation, seventeen potential victims of Defendant were interviewed, and approximately fifteen of them indicated that Defendant abused them under the guise of medical treatment, as Defendant was a licensed nurse practitioner. (*Id.* at 6.)

The FBI Sacramento field office became involved in the investigation into Defendant around November 1, 2022, after CPS forwarded the investigation to the Lassen County Sheriff's Office, which then in turn contacted the FBI. (*Id.*) Around this time, DCA contacted U.S. Homeland Security Investigations ("HSI") in Sacramento for assistance with the investigation. (*Id.*) Accordingly, HSI, the FBI, and DCA began a coordinated investigation into Defendant. (*Id.*)

The investigation led to the discovery of evidence indicating that Defendant sexually abused more than one hundred minors and adults from approximately 1986 through 2020 and across multiple states and foreign countries. (*Id.* at 7–30.) Defendant committed the alleged sexual abuse often under the guise of medical treatment and through his participation with church youth groups, mission trips, camping trips, and pediatric clinics. (*Id.*)

On July 5, 2023, following the investigation into Defendant's conduct, Special Agent Russell Quiniola from the FBI authored an affidavit in support of applications for search warrants for multiple properties associated with Defendant and for Defendant himself. (Doc. Nos. 179-2; 179-3; 177; 177-1; 180-2; 180-3.) These properties included (1) the real property located at 700 Ash Street, Susanville, California ("700 Ash Street"), (2) the real property located at 694–720 Ridgetop Drive, Susanville, California ("Ridgetop Drive"), and (3) the real property located at 710 Ash Street, Susanville, California ("710 Ash Street"). (*Id.*) At the time Special Agent Quiniola authored the search warrant application, Ridgetop Drive was Defendant's residential address. (*Id.* at 30–31.) Defendant previously listed his registered business interchangeably at 700 Ash Street and 710 Ash Street. (*Id.*) The Lassen County Sheriff's office conducted a title search of 700 Ash Street and 710 Ash Street on April 27, 2023, which revealed that Defendant owned 710 Ash Street through the Bradley Reger 2013 Revocable Trust, and owned 700 Ash Street under his company, Earlyn, Limited Partnership. (*Id.* at 33.) The principal business address for

2

Earlyn, Limited Partnership was listed as Defendant's residential address. (*Id.*)

On July 5, 2023, a magistrate judge authorized the search of (1) 700 Ash Street, (2) Ridgetop Drive, and (3) 710 Ash Street. (Doc Nos. 179-3; 180-3; 177-1.) On July 6, 2023, law enforcement executed the search warrants on all three properties. (*Id.*) Upon execution of the search warrant at 710 Ash Street, law enforcement learned that Defendant had transferred that property six weeks earlier to his daughter and son-in-law, Naomi and Keith Crosby. (Doc. No. 146-3 at 3.) Defendant indicates that on May 22, 2023, Defendant transferred 710 Ash Street from the Bradley E. Reger Revocable Trust to his daughter and son-in-law. (Doc. No. 146 at 12.)

**B.    Procedural Background**

On July 5, 2023, Defendant was first charged by a criminal complaint with one count of engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c). (Doc. No. 1.) On July 20, 2023, a grand jury returned an indictment charging Defendant with two counts of engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c) (counts one and four); one count of transportation with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (count two); and two counts of coercion and enticement, in violation of 18 U.S.C. § 2422(a) (counts three and five). (Doc. No. 14 at 1–6.)

On September 19, 2024, a grand jury returned a superseding indictment charging Defendant with twelve (12) counts of criminal conduct. (Doc. No. 63.) The superseding indictment charges Defendant with the same five counts as charged in the original indictment and adds seven additional counts. (Doc. Nos. 63, 14.) The superseding indictment charges Defendant with one additional count of coercion and enticement, in violation of 18 U.S.C. § 2422(b) (count six); two counts of travel with intent to engage in a sexual act, in violation of 18 U.S.C. § 2423(b) (counts seven and twelve); and three additional counts of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (counts eight, nine, ten, and eleven). (Doc. No. 63.)

On January 12, 2026, Defendant filed three motions to suppress evidence obtained from: search warrant 2:23-sw-0673-DB ("700 Ash Street Search Warrant") (Doc. No. 144); search warrant 2:23-sw-0670-DB ("710 Ash Street Search Warrant") (Doc. No. 146); and search warrant

3

2:23-sw-0671-DB ("Ridgetop Drive Search Warrant") (Doc. No. 148). On February 2, 2026, the Government filed an opposition to each of Defendant's motions to suppress. (Doc. Nos. 167, 168, 169). On February 23, 2026, Defendant filed replies thereto. (Doc. Nos. 184, 185, 186.) On July 1, 2026, the court held a hearing on Defendant's motions to suppress, and the court took those motions under submission. (Doc. No. 234.)

**LEGAL STANDARD**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. The Fourth Amendment's Warrants clause requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*

**ANALYSIS**

The court will now turn to each of Defendant's motions to suppress. Because Defendant raises similar arguments in his motions to suppress the 700 Ash Street Search Warrant and the Ridgetop Drive Search Warrant, the court will address these motions together.

**A.    710 Ash Street Search Warrant (Doc. No. 146)**

An individual has standing to sue for a violation of the Fourth Amendment "only if there has been a violation 'as to him' personally." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009) (quoting *Mancusi v. DeForte*, 392 U.S. 364, 367 (1968)). Unlike Article III standing, "to say that a party lacks Fourth Amendment standing is to say that his reasonable expectation of privacy has not been infringed." *SDI Future Health, Inc.*, 568 F.3d at 695 (quoting *United States v. Taketa,* 923 F.2d 665, 669 (9th Cir. 1991)). Thus, a defendant must demonstrate he has a reasonable and "subjective expectation of privacy in the area searched, and their expectation must be one that society would recognize as objectively reasonable." *Id.* (quoting *United States v. Sarkisian,* 197 F.3d 966, 986 (9th Cir. 1999)). Indeed, the Supreme Court has recognized that the Fourth Amendment "protects people, not places." *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).

As a threshold matter, the Government argues that Defendant does not have standing to

4

challenge the search of 710 Ash Street because at the time the warrant was executed, Defendant no longer owned the property and thus no longer had a reasonable expectation of privacy in it. (Doc. No. 169 at 14.) Defendant argues in reply that the Government's standing argument "is both procedurally improper and substantially incorrect." (Doc. No. 185 at 3.) Defendant argues he maintained a legitimate expectation of privacy in 710 Ash Street at the time law enforcement executed the search warrant on the property, despite relinquishing ownership six weeks earlier. (*Id.*)

Defendant's brief argument is unavailing. As both parties point out, Defendant transferred ownership rights of 710 Ash Street on May 22, 2023, to his daughter and son-in-law, approximately six weeks before law enforcement executed the search warrant on that property. (Doc. Nos. 146 at 12; 146-3 at 3; 146-4 at 2.) At minimum, Defendant no longer had an ownership interest in 710 Ash Street during the relevant period when the search warrant was executed. *United States v. Peel*, No. 2:14-cr-00192-GEB, 2014 WL 4230926, at *13 (E.D. Cal. Aug. 25, 2014) ("A person does not possess a reasonable expectation of privacy in an item in which he has no possessory or ownership interest.") (quoting *United States v. Thomas,* 447 F.3d 1191, 1197 (9th Cir. 2006)).

Further, Defendant also states that at the time the search warrant was executed and since 2021, Defendant had "extremely limited access to 710 Ash Street" because "new security codes were implemented and the location was rekeyed." (Doc. No. 146 at 12, 16.)  As the Ninth Circuit has previously articulated, "it is crucial to Fourth Amendment standing that the place to be searched be 'given over to the defendant's exclusive use.'" *SDI Future Health, Inc.*, 568 F.3d at 696 (quoting *Schowengerdt v. Gen. Dynamics Corp.,* 823 F.2d 1328, 1335 (9th Cir. 1987)). The evidence provided by Defendant suggests that Defendant did not have access to 710 Ash Street at the time law enforcement executed the search warrant, let alone that he had "exclusive use" of the property. Defendant's son-in-law indicates in his declaration in support of Defendant's motion to suppress that while his co-ownership of 710 Ash Street was finalized in 2023, he had an agreement to acquire the property as early as 2020. (Doc. No. 146-3 at 3.) Defendant's son-in-law further attests that at the time the search warrant was executed, Defendant "did not have a key or

the ability to independently access the 710 Ash Street building." (*Id.*) Defendant's son-in-law states that he was in the process of moving Defendant's remaining belongings from 710 Ash Street to 700 Ash Street. (*Id.*) Even assuming Defendant continued to work at 710 Ash Street after he relinquished ownership (though it appears he did not), Defendant fails to provide evidence regarding whether he retained any area within 710 Ash Street that he had exclusive access to. *See Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987) (concluding that individuals did not have a reasonable expectation of privacy in their workplace because "the workers had no private space in any part of the building, and no authority to exclude others"). Though "[e]xclusive use of an office may be sufficient" to confer standing, Defendant has submitted no evidence to support that he retained an office or private space in 710 Ash Street after he relinquished possession of the property. *See SDI Future Health, Inc.*, 568 F.3d at 696. Instead, the evidence submitted by Defendant establishes that he did not have access to 710 Ash Street at all, let alone exclusive access to specific locations within 710 Ash Street.

Accordingly, the court finds that Defendant has not established that he has standing to challenge the search warrant executed on 710 Ash Street. Therefore, the court will deny Defendant's motion to suppress evidence obtained from the 710 Ash Street Search Warrant.

**B.    700 Ash Street Search Warrant (Doc. No. 144) and Ridgetop Drive Search Warrant (Doc. No. 148)**

Defendant moves to suppress all evidence obtained from the 700 Ash Street Search Warrant and the Ridgetop Drive Search Warrant. (Doc. Nos. 144, 148.) Defendant argues that the search warrants were constitutionally deficient because (1) the information in the affidavit was stale; (2) the affidavit contained material omissions of fact; (3) the affidavit failed to establish a sufficient nexus between the alleged criminal activity and the property to be searched; and (4) the warrants were overbroad and lacked particularity. *Id.*

1.    Probable Cause

"Probable cause to search a location exits if, based on the totality of the circumstances, there is a 'fair probability' that evidence of a crime may be found there." *United States v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017) (citation omitted). "[T]he duty of a reviewing court is simply

6

to ensure that the magistrate had a 'substantial basis for concluding that probable cause existed.'" *United States v. Thompson*, 751 F.2d 300, 301–02 (8th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). The inquiry into whether probable cause exists is a "practical, common-sense determination" that depends on the totality of the circumstances. *Gates*, 462 U.S. at 238. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause requires only a fair probability that evidence of a crime will be found in a particular place. *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003). The magistrate's determination of probable cause in support of a search warrant "should be paid great deference." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citation omitted).

In determining whether a search warrant was supported by probable cause, a reviewing "court is limited to the information and circumstances contained in the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778, *amended on other grounds,* 769 F.2d 1410 (9th Cir. 1985). To determine whether a search warrant was supported by probable cause, courts look for evidence in the affidavit demonstrating (1) that a crime was committed; (2) that it was the defendant who committed the crime; and (3) that evidence of the crime would be found in the place to be searched. *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011).

a.    Staleness

An affidavit in support of an application for a search warrant must rely on facts "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (quoting *Durham v. United States,* 403 F.2d 190, 193 (9th Cir. 1968)). "However, 'the mere lapse of substantial amounts of time is not controlling in a question of staleness.'" *Id.* (quoting *United States v. Dozier,* 844 F.2d 701, 707 (9th Cir.1988)). Instead, staleness is evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought." *Id.* (citation omitted). If "there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises," the information provided to support the application is not stale. *Id.* at 746 (quoting *United States v. Gann,* 732 F.2d 714, 722 (9th Cir. 1984)). Indeed, "when the evidence sought is of an ongoing criminal business of a necessarily long-term nature . .

7

. greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time." *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). "One may properly infer that equipment acquired to accomplish the crime and records of criminal activity will be kept for some period of time." *Id.*

Defendant argues that the affidavit supporting the applications for the 700 Ash Street Search Warrant and the Ridgetop Drive Search Warrant were insufficient to establish probable cause because it relied on stale information. (Doc. Nos. 144 at 16–18; 148 at 11–15.) Defendant argues that the information in the affidavit was stale because it provided no evidence of any criminal activity in the three years preceding the warrant application. (Doc. No. 144 at 16; 148 at 12.) Defendant also argues that because law enforcement did not conduct surveillance of 700 Ash Street, there was no basis to conclude that there would be any evidence of criminal activity at that property. (Doc. No. 144 at 12.) The Government argues that contrary to Defendant's assertions, the affidavit in support of the 700 Ash Street Search Warrant establishes that Defendant engaged in a continuing pattern of criminal activity. (Doc. No. 168 at 15.)

As Defendant points out, the 700 Ash Street Search Warrant and the Ridgetop Drive Search Warrant were issued on July 5, 2023, and executed on July 6, 2023, based on allegations of criminal conduct that occurred between 1986 and 2020. (Doc. Nos. 144 at 15; 148 at 12.) Thus, approximately three years passed between the latest allegations of criminal conduct contained in the affidavit and the execution of the search warrants. Despite this time lapse, Defendant's argument that the information contained in the affidavit was stale is unavailing.

As to the Ridgetop Drive Search Warrant, a victim reported being sexually abused by Defendant at Defendant's residence as late as 2020. (Doc. No. 179-2 at 30.) In addition, the victims provided information in the affidavit demonstrating that there was a likelihood that evidence of Defendant's alleged criminal conduct would be found at his residence. *See Lacy*, 231 F.3d at 745–46. A victim reported that Defendant took pictures of the victim's moles using a "camera lens that [Defendant] placed on his iPhone," "used an app on his iPhone to store these pictures," and charted his moles as part of a supposed medical examination. (Doc. No. 179-2 at 18–20.) Another victim reported that Defendant took pictures of the victim's genitalia on his

8

iPhone, and possibly his iPad. (*Id.* at 35.) Multiple victims also reported that Defendant "kept old cellular telephones, desktop computers, and laptops computers at his residence." (*Id.* at 34); *see also United States v. Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on [the defendant's] computer, even if he had tried to delete the images.") (citation omitted). The investigation into Defendant provided information that Defendant used these devices to organize mission trips and book hotel rooms, where he allegedly abused victims. (*Id.* at 34–35.) Defendant also used these devices to communicate via texting and direct message with many of his victims. (*Id.*) An authorized search warrant for Defendant's social media accounts revealed that Defendant continued to use electronic devices to keep in contact with his victims at least through 2022. (*Id.* at 35.) Defendant also used his electronic devices to contact an orphanage in Kenya in March 2023, about a scheduled visit. (*Id.*) In sum, "there [was] sufficient basis [for the magistrate] to believe, based on a continuing pattern or other good reasons, that the items to be seized [were] still on the premises." *Gann*, 732 F.2d at 722.

As to the 700 Ash Street Search warrant, a victim reported that Defendant would "utilize a medical chart to record checkups and update this file upon each visit." (Doc. No. 179-2 at 15.) Further, that same victim recalled that he saw medical charts for other individuals in Defendant's clinic as well. (*Id.*) Another victim stated that Defendant created a chart to track a mole's size on the minor victim's genitalia and to justify further exams. (*Id.* at 11.) Multiple victims reported undergoing a "medical exam" at the "Ash Street Clinic." (*Id.* at 7, 11, 14, 15, 18, 24, 26, 31.) The information in the affidavit establishes that abuse under the guise of medical examinations occurred at least between 2005 and 2018. (*Id.*) A victim and an employee for multiple of the companies registered at 700 Ash Street also recalled that Defendant's files were stored at both 700 and 710 Ash Street. (*Id.* at 33.) Further, that employee stated one of his tasks was to move business files into a "newly constructed file room in the 700 Ash Street building." (*Id.*) A different employee stated that "he remembered files stored in the medical clinic and a separate storage room located at 700 Ash Street." (*Id.* at 32.) Another victim reported seeing Defendant's son-in-law moving files between 700 and 710 Ash Street as recently as 2023. (*Id.* at 33.)

9

Additionally, a search of several businesses registered to Defendant showed that Broad Meadows Clinic, among other businesses, listed both 700 Ash Street and 710 Ash Street interchangeably depending on the website searched. (*Id.*) This information contained in the affidavit plainly contradicts Defendant's perplexing assertion that "there is no evidence or allegation that [Defendant] maintained any records, images, or other materials related to the alleged abuse." (Doc. No. 144 at 18.) To the contrary, there is ample evidence in the affidavit to establish a "fair probability" that that Defendant systemically abused his victims under the guise of medical treatment, and kept records and images documenting such conduct, as recounted by the victims themselves. (*See* Doc. No. 179-2.) Therefore, "there [was] a sufficient basis [for the magistrate] to believe, based on a continuing pattern or other good reasons, that the items to be seized [were] still on the premises." *Gann*, 732 F.2d at 722.

b.      Nexus

"For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched." *United States v. Crews*, 502 F.3d 1130, 1136–37 (9th Cir. 2007) (citing *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002)). A magistrate need only find it "reasonable to seek the evidence at the location indicated in the affidavit." *Crews*, 502 F.3d at 1136–37 (citation omitted). The magistrate is not required to determine that the evidence "is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place," only that "it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990) (citation omitted).

As to the Ridgetop Drive Search Warrant, Defendant argues that the affidavit failed to establish a nexus between Defendant's alleged criminal conduct and his residence because none of the abuse is alleged to have occurred there, and rather, the only connection is that electronic devices and documents may be stored there. (Doc. No. 148 at 19.)

First, Defendant's argument that none of the abuse is alleged to have occurred at Defendant's residence is factually inaccurate. A victim reported that in 2020, he had unwanted sexual conduct with Defendant at Defendant's residence. (Doc. No. 179-2 at 27.) Second,

10

information that electronic devices and documents containing evidence of Defendant's criminal conduct may be stored at Defendant's residence is sufficient to establish probable cause. Again, multiple victims stated that Defendant retained pictures of victims' genitalia and moles on his electronic devices. (*Id.* at 34–35.) The investigation into Defendant also showed that he used electronic devices to book trips where criminal conduct allegedly took place and to contact victims via text messages and social media accounts. (*Id.*)

As to the 700 Ash Street Search Warrant, Defendant argues that the affidavit failed to establish a nexus between Defendant's alleged criminal conduct and the property because most of the alleged abuse occurred elsewhere and the affidavit improperly conflated 700 Ash Street and 710 Ash Street. (Doc. No. 144 at 19–21.) As the court has already described, the affidavit provided information to support that there was a reasonable probability that evidence of a crime may be found at 700 Ash Street. *See Terry*, 911 F.2d at 275. Accordingly, the court finds that there was sufficient information in the affidavit for the magistrate to conclude that it was "reasonable to seek the evidence at the location indicated in the affidavit." *Crews*, 502 F.3d at 1136–37.

2.      Overbreadth and Particularity

As stated above, the Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Towne,* 997 F.2d 537, 544 (9th Cir. 1993) (internal quotation marks and citations omitted). To satisfy the particularity requirement, the "description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015) (quoting *United States v. Smith*, 424 F.3d 992, 1004 (9th Cir. 2005)). The specificity requirement can be satisfied by identification of categories of items, "depending on the circumstances of the case and the type of items involved." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). The purpose of the breadth requirement "is to limit the

11

scope of the warrant by the probable cause on which the warrant is based." *Fries*, 781 F.3d at 1151 (quoting *Smith*, 424 F.3d at 1004). In determining whether a warrant was overbroad, the court considers three factors:

> (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available . . . .

*United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (quoting *United States v. Shi,* 525 F.3d 709, 731–32 (9th Cir. 2008)).

As to the Ridgetop Drive Search Warrant, Defendant argues it was overbroad and unspecific because it authorized the search of the entire property, authorized the seizure of "all electronic storage devices found within the premises" without any temporal or subject-matter limitations, and authorized the seizure of broad categories of medical items. (Doc. No. 148 at 22–24.) Defendant raises similar arguments as to the 700 Ash Street Search Warrant. Defendant argues it was overbroad because it authorized seizure of items dating back to 1986, authorized the seizure of broad categories of medical items, and authorized the seizure of computers and electronic devices without limiting the timeframe for electronic communications or records. (Doc. No. 144 at 22–24.)

First, the Ridgetop Drive Search Warrant was not overbroad as to the authorization to search the entire property. As the Government points out, the Ninth Circuit in *United States v. Miller*, 753 F.2d 1475, 1481 (9th Cir. 1985) determined that a warrant that authorized the search of other structures on the defendant's property besides his house was not overbroad because it appeared that the defendant was "in control of the entire premises and the entire premises were suspect." In reaching this conclusion, the Ninth Circuit noted that the defendant did not specify why probable cause existed to search only some buildings on the property but not others, and that there was no evidence to suggest that the defendant did not exercise control over the entire property. *Id.* Here, Defendant's argument is that probable cause did not exist as to the property in its entirety. Defendant makes no attempt to argue that probable cause did not exist as to some

12

specific area of property. Nor does Defendant argue that he did not exercise control over some areas of his property. Accordingly, the court finds no basis upon which to find that the Ridgetop Drive Search Warrant was overbroad on this ground.

Second, the *Shi* factors suggest that neither the 700 Ash Street nor the Ridgetop Drive Search Warrants were overbroad as to their authorization of the seizure of electronic devices. As to the first and third factors, the Ninth Circuit has previously upheld the "blanket seizure" of computer equipment "when a more precise description is not possible." *Lacy*, 119 F.3d at 746. The Ninth Circuit has also recognized that in the digital age, there is a "legitimate need to scoop up large quantities of data, and sift through it carefully," and that "over-seizing data is an inherent part of the electronic search process." *United States v. Balwani*, No. 5:18-cr-00258-EJD-2, 2022 WL 1405404, at *4 (N.D. Cal. May 4, 2022) (citing *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1176–77 (9th Cir. 2010)). As to the second factor, Attachment B to both search warrants contained clear directions and limitations on the information to be seized, and authorized law enforcement to seize only evidence of violations of specified criminal statutes. (Doc. No. 179-2 at 43–44; 180-2 at 43–44.); *see also United States v. Young*, No. 4:21-cr-00098-BLW, 2021 WL 5889526, at *5 (D. Idaho Dec. 13, 2021) (search warrant for digital devices not overbroad where the warrant could not have been more particular under the circumstances and where it contained clear directions to law enforcement about what to seize).

Third, neither the 700 Ash Street nor the Ridgetop Drive Search Warrants were overbroad as to their authorization of the seizure of medical items. Defendant argues that the search warrants were overbroad in their authorization of the search of Defendant's medical items. As to the first *Shi* factor, however, the affidavit supported probable cause to seize all medical items described in the warrant because the warrant authorized the seizure of specific medical and prescription information related to medical treatments that were discussed in the affidavit, rather than to all of Defendant's medical supplies and prescription information. (Doc. No. 179-2 at 51) (authorizing a search for "[a]ny items related to medical treatment of the groin, testicles, lymph nodes, inguinal hernias, measurement or analysis of moles, or other pretextual medical treatment . . . ."). As to the second factor, again, Attachment B to both the warrants contained clear directions and limitations

13

on the information to be seized, and authorized law enforcement to seize only evidence of violations of specified criminal statutes. (Doc. No. 179-2 at 43–44; 180-2 at 43–44.) Further, as to the third factor, the search warrants do describe with particularity the prescription information and medical items to be searched, rather than leaving law enforcement with "virtually unlimited discretion to seize any medical equipment" as Defendant argues in his motion. (Doc. No. 144 at 23.)

Fourth, Defendant argues the 700 Ash Street Search Warrant is overbroad because it authorizes the seizure of items dating back to 1986. However, the information in the affidavit suggests that Defendant was engaged in a pattern of criminal conduct dating back to 1986, and that Defendant documented his alleged criminal activity through photographs and medical record-keeping. (*Id.* at 6–8; 20–21, 30.) Therefore, a broad temporal search was supported by probable cause given the information provided in the affidavit. Accordingly, the court finds no basis upon which to find that either the 700 Ash Street nor the Ridgetop Drive Search Warrants were unconstitutionally overbroad.

3.      *Frank's* Hearing

In order for Defendant to obtain a *Franks* hearing to test the validity of an affidavit for a search warrant, he "must make a substantial preliminary showing that: (1) 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant,' and (2) 'the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause.'" *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (quoting *Perkins*, 850 F.3d at 1116).

As to the Ridgetop Drive Search Warrant, Defendant alleges that the affidavit in support of the search warrant contained several omissions that misled the magistrate. (Doc. No. 148 at 15–16.) Defendant avers that the affidavit does not (1) disclose how many of 167 listed victims law enforcement spoke to; (2) affirmatively state that no victim alleges they were abused at Defendant's residence; (3) disclose that most of the alleged criminal conduct occurred during travel or overseas; and (4) specify when the victims visited the residence. (*Id.*) However, the affidavit does in fact include this information. The affidavit includes information regarding

14

multiple interviews with victims, and nowhere in the affidavit does the affiant claim that law enforcement had interviewed all 167 of the listed victims. (*See generally* Doc. No. 179-2.) A victim did report unwanted sexual contact occurring at Defendant's residence. (Doc. No. 179-2 at 27.) The affidavit includes ample information regarding criminal conduct occurring overseas and on trips. (Doc. No. 179-2 at 8–29.) The affidavit also provides a specific year in which a victim alleges he had unwanted sexual conduct with Defendant at his residence. (*Id.* at 27.) Accordingly, Defendant has failed to make the threshold showing the "affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *See Norris*, 942 F.3d at 909–10.

As to the 700 Ash Street Search Warrant, Defendant alleges that the affidavit in support of the search warrant also contained omissions that misled the magistrate. (Doc. No. 144 at 32–33.) Defendant argues that the affidavit omits that Defendant had significant health issues that made the property less accessible to him since 2020, and that 710 Ash Street changed ownership several weeks before the warrant was executed. (*Id.*) As for Defendant's argument that the affidavit omitted information about Defendant's health, the court finds this unavailing. Defendant does not explain how his lack of mobility would make it less likely that evidence of alleged criminal conduct would be found at 700 Ash Street. In any event, the affidavit contains a reference to the fact that Defendant suffered a stroke in 2023. (Doc. No. 179-2 at 35.) Second, Defendant also does not explain how the recent change in ownership of 710 Ash Street would affect the magistrate judge's determination of probable cause to search 700 Ash Street. Further, the affidavit reflects that the Lassen County Sheriff's Office conducted a title search on the property on April 27, 2023, confirming that Defendant still owned 710 Ash Street, demonstrating law enforcement's good faith effort to determine the ownership of the property. (*Id.* at 30.) Accordingly, Defendant has failed to make the threshold showing the "affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *See Norris*, 942 F.3d at 909–10.

4.      Good Faith Exception

Because the court finds that the 700 Ash Street Search Warrant and the Ridgetop Drive

15

Search Warrant were support by probable cause, the court need not address whether the "good faith" exception applies. *See United States v. Leon*, 468 U.S. 897, 906 (1984). However, the good faith exception provides an alternative ground for denying Defendant's motions.

Under the exclusionary rule, evidence obtained pursuant to an invalid warrant is subject to suppression. *United States v. Henderson*, 906 F.3d 1109, 1114–15 (9th Cir. 2018). However, "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," and the "exclusionary rule is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *Leon*, 468 U.S. at 906 (citation omitted). "The good-faith exception precludes the suppression of evidence seized by officers who acted 'in objectively reasonable reliance' on a search warrant that is later declared invalid." *United States v. Artis*, 919 F.3d 1123, 1133 (9th Cir. 2019) (quoting *Leon*, 468 U.S. at 922). To determine whether the exception applies, courts consider "whether the police misconduct that led to the discovery of the illegally obtained evidence is itself subject to the good-faith exception. If it is, suppression of the evidence seized pursuant to the warrant will not be justified." *Artis*, 919 F.3d at 1133.

For the same reasons the 700 Ash Street and Ridgetop Drive Search Warrants were supported by probable cause, law enforcement officers "relied on the search warrant[s] 'in an objectively reasonable manner.'" *SDI Future Health, Inc.*, 568 F.3d at 706 (citation omitted). As discussed, the affidavits in support of the applications for search warrants did not contain materially false information, and any deficiency in the warrant applications was not so obvious as to render belief in probable cause entirely unreasonable. *See United States v. Bohannon*, No. 19-cr-00039-CRB-1, 2020 WL 7319430 (N.D. Cal. Dec. 11, 2020), *aff'd sub nom. United States v. Bohannon*, No. 21-10270, 2023 WL 5607541 (9th Cir. Aug. 30, 2023). Accordingly, the court finds that even if the 700 Ash Street and Ridgetop Drive Search Warrants were constitutionally deficient, the good faith exception applies, and the exclusion of evidence is not warranted. *See Shi*, 525 F.3d at 731 ("Good faith reliance exists if the agents' affidavit establishes 'at least a colorable argument for probable cause,' and the agents relied on the search warrant in an objectively reasonable manner.") (citation omitted).

The court will therefore deny Defendant's motions to suppress the evidence obtained from the 700 Ash Street Search Warrant and the Ridgetop Drive Search Warrant in their entirety.

**CONCLUSION**

For the reasons explained above,

1.    Defendant's motion to suppress evidence obtained from the 700 Ash Street Search Warrant (Doc. No. 144) is DENIED;

2.    Defendant's motion to suppress evidence obtained from the Ridgetop Drive Search Warrant (Doc. No. 148) is DENIED; and

3.    Defendant's motion to suppress evidence obtained from the 710 Ash Street Search Warrant (Doc. No. 146) is DENIED.

IT IS SO ORDERED.

Dated:    **July 2, 2026**    _____

Dena Coggins
United States District Judge

17