UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRADLEY EARL REGER,<br>Defendant. | No. 2:23-cr-00177-DC-1<br><br>ORDER ON MOTIONS *IN LIMINE* AND DEFENDANT'S MOTION FOR RECONSIDERATION<br><br>(Doc. Nos. 246, 247, 248, 250, 253, 254, 255, 257, 259, 264, 265, 267, 268, 328) |

This matter came before the court on September 4, 2026 for a hearing on the motions *in limine* filed by both the Government and Defendant. At the hearing, the court issued rulings from the bench on several of the parties' motions *in limine*. (*See* Doc. No. 325.) On September 9, 2026, the court took the remaining motions *in limine* under submission and indicated that a written order would be issued on those pending motions. (*See* Doc. No. 326.) Those pending motions will be addressed in this order.

**BACKGROUND**

Defendant is charged in the operative superseding indictment with the following counts: two counts of engaging in sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c); five counts of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a); two counts of coercion and enticement, in violation of 18 U.S.C.

§ 2422(a); and two counts of coercion and enticement, in violation of 18 U.S.C. § 2423(b). (Doc. No. 63 at 1–6.) The Government alleges that Defendant engaged in illicit sexual conduct with ten minor victims between the years 1996 and 2019. (*Id.*)

**LEGAL STANDARD**

"A motion *in limine* is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citing Black's Law Dictionary 803, 1038–39 (8th ed. 2004)). Like other pretrial motions, motions *in limine* "are useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (quoting *Palmerin v. City of Riverside*, 794 F.2d 1409, 1413 (9th Cir. 1986)). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citations omitted).

"In many instances, rulings 'should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.'" *Vargas v. Lopez*, No. 23-cv-02490-TSH, 2025 WL 2800196, at *1 (N.D. Cal. Sep. 30, 2025) (quoting *U.S. v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016)); *see Williams v. Castro*, No. 20-cv-01617-SAB, 2023 WL 2432770, at *1 (E.D. Cal. Mar. 9, 2023) (noting that "some evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion *in limine* and it is necessary to defer ruling until during trial when the trial judge can better estimate the impact of the evidence on the jury") (citing *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Moreover, *in limine* rulings are not binding on the court, and the court may change its ruling during trial. *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see City of Pomona*, 866 F.3d at 1070 ("The district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling.") (quoting *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999)).

/////

## ANALYSIS

### A. Motions *in Limine* Resolved at the Hearing on September 4, 2026

At the hearing on the parties' motions *in limine*, the court issued rulings from the bench on certain motions *in limine*.

The court granted in part the Government's motion *in limine* No. 3 (Doc. No. 244) for the reasons, and to the extent, explained on the record.

The court denied without prejudice the following motions *in limine* for the reasons, and to the extent, explained on the record: Government's motions *in limine* Nos. 1 and 2 (Doc. Nos. 241, 242); and Defendant's motions *in limine* Nos. 5, 6, 10, 12, 13, and 16 (Doc. Nos. 251, 258, 256, 262, 263, 266).

### B. Defense Motion *In Limine* No. 1

In Defendant's motion *in limine* No. 1, Defendant seeks to exclude, or in the alternative limit, the testimony of proposed Government expert witness Margarita Toscano. (Doc. No. 246.) Defendant contends that Ms. Toscano's proposed testimony regarding whether Defendant's conduct was inconsistent with a medical standard of care "does not itself establish any element of the charged offenses." (*Id.* at 1–2.) Defendant further argues that the Government should be required to establish, outside the presence of the jury, that Ms. Toscano is qualified as an expert witness pursuant to Federal Rule of Evidence 702, and that Ms. Toscano's proposed testimony should be excluded as unduly prejudicial pursuant to Federal Rule of Evidence 403. (*Id.* at 5–6.)

Expert witness testimony is permitted when the proponent establishes, by a preponderance of the evidence, that (1) the witness's scientific, technical, or specialized knowledge will help the jury understand the evidence or "determine a fact in issue"; (2) the proposed testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reliably applies those principles and methods to the facts of the case. Fed. R. Evid. 702. Additionally, a court may limit expert witness testimony where its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. The trial court is assigned with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)

1. Relevance

Defendant argues that Ms. Toscano's proposed testimony regarding a medical standard of care is inadmissible because the "charged offenses require proof of particular conduct and particular mental states" and that "a generalized opinion that [Defendant's] conduct was inconsistent with a professional standard does not itself establish those elements." (Doc. No. 246 at 3.) In its opposition, the Government argues that standard of care testimony is relevant because Defendant "is likely to claim that his conduct was for legitimate medical purposes, and therefore not illicit or unlawful sexual conduct." (Doc. No. 272 at 5.) Thus, the Government argues Ms. Toscano's testimony is admissible because "whether [Defendant's] conduct was medically necessary, or within the usual course of professional practice for the purpose of the procedure will be a contested issue at trial." (*Id.*)

The Government's argument is availing because the relevant inquiry is whether the proposed testimony will help the jury "determine a fact in issue," Fed. R. Evid. 702(a), not, as Defendant contends, whether the proposed testimony would "itself establish" a statutory element of the charged offenses. The Government anticipates that Defendant will argue that his conduct with the alleged minor victims did not constitute illicit sexual conduct but was part of a legitimate medical examination. Indeed, expert witness testimony is admissible where it "explain[s] for the jury that [the defendant's] behavior with [the alleged victim] could be innocent behavior, or it could actually have been part of his plan to engage in illicit sexual activity with [the victim]." *United States v. Telles*, 18 F.4th 290, 303 (9th Cir. 2021) (citation modified).

In his reply, Defendant argues that the Government's proffered basis for Ms. Toscano's proposed testimony would impermissibly permit her to "state an opinion or inference as to whether [Defendant] possessed the mental state constituting an element of the offense." (Doc. No. 298 at 5.) However, even in the decision Defendant cites to support this argument, the Ninth Circuit clarified that the trial court properly permitted the expert witness to testify as to "the large number of people who engage in sexual texting or chat rooms for pure fantasy" such that defendant's counsel was "able to argue to the jury in closing that [the defendant] was one of those

people," and that "in the [the defendant's] mind there was no real intent." *U.S. v. Hofus*, 598 F.3d 1171, 1180 (9th Cir. 2010). Contrary to Defendant's argument, it appears the reasoning in *Hofus* would support permitting Ms. Toscano to testify. At the hearing on the motions *in limine*, the court asked defense counsel to explain why the reasoning in *Hofus* supports Defendant's argument, as opposed to supporting the court permitting Ms. Toscano to testify regarding medical standards of care, such that the Government could then argue that Defendant's alleged deviation from those standards was evidence of his intent to engage in illicit sexual conduct. Defense counsel declined to respond to the court's question.

The court finds Ms. Toscano's proposed testimony is admissible under Rule 702(a) to help the jury determine whether Defendant's conduct was illicit sexual conduct or was part of an innocent medical examination. The court does not find that permitting Ms. Toscano to testify regarding alleged deviations from a medical standard of care would necessarily lead to improper testimony by Ms. Toscano as to her opinion of Defendant's mental state at the time of the act. Thus, the court will deny Defendant's request to exclude Ms. Toscano's expert testimony on the ground that such testimony is irrelevant.

2. Reliability

Defendant next contends that the Government has not established that Ms. Toscano's proffered testimony is based on sufficient facts and evidence and is based on reliable methods, and that her testimony would reliably apply those methods to the facts of the case. (Doc. No. 246 at 5–6.) Defendant argues the court should require that the Government prove those elements outside the presence of the jury. (*Id.*)

In its opposition, the Government emphasizes that Ms. Toscano's expert disclosure and reports, which were previously served on Defendant, establish each of these elements. (Doc. No. 272 at 4.) Specifically, the Government emphasizes that Ms. Toscano has a Masters of Science in Nursing and is a Board Certified Family Nurse Practitioner. (Doc. No. 272 at 1.) Ms. Toscano has been an expert practice consultant for the Board of Registered Nursing since 2019, and a Family Nurse Practitioner employed in the Pediatric Department at Olive View-UCLA Medical Center / the Department of Health Services for Los Angeles County since 2016. (*Id.* at 1–2.) Ms. Toscano

has also been an Assistant Clinical Professor at the UCLA School of Nursing since 2020. (*Id.* at 2.) The Government further emphasizes that Ms. Toscano's "reports inform[] the reader of the basis for her opinions, oftentimes either the video or audio of the interview of a victim, or a summary of the interview." (*Id.* at 4.) Next the Government emphasizes that Ms. Toscano's conclusions were predicated on the "'4 Principles of Ethics for Nurses' with a citation to the American Nurses Association definition of the four principles." (*Id.*) Finally, the Government indicates that Ms. Toscano cites her sources and the basis for her standard of care determinations in her reports. (*Id.*)

In his reply, Defendant argues that the "Government's generic assertion that [Ms.] Toscano cites professional ethics principles, reviewed records and interviews, and identifies asserted departures in her reports does not meet [the Government's] burden." (Doc. No. 298 at 4.) However, Defendant does not object to any specific portion of Ms. Toscano's reports nor cite authorities holding that the information contained in Ms. Toscano's reports is insufficient to meet the Government's burden. Upon review of those reports, Ms. Toscano's curriculum vitae, and the notice and disclosure of expert witness (Doc. Nos. 272-1, 272-2, 324-1), the court finds Ms. Toscano's proposed testimony sufficiently reliable for the court to admit her testimony subject to proof at trial. Thus, the court will deny Defendant's request for the court to conduct a hearing at which the Government must prove the reliability of Ms. Toscano's proposed testimony outside the presence of the jury.

3. <u>Prejudice</u>

Defendant next contends that "[e]ven if Ms. Toscano's opinion has some marginal relevance, it should be excluded under Rule 403" because "'[s]tandard of care' terminology is commonly associated with civil negligence and professional-malpractice concepts" such that there is a risk the "jurors will regard an alleged deviation from an asserted professional standard as proof that [Defendant] committed a federal crime." (Doc. No. 246 at 6.) As discussed above, Ms. Toscano's testimony is directly relevant to Defendant's anticipated defense that his conduct was medically appropriate, not illicit sexual conduct. The court will be better equipped to determine whether the probative value is substantially outweighed by danger of confusing the

issues or misleading the jury at trial. Thus, the court will reserve ruling on Defense Motion *in Limine* No. 1, as to whether Ms. Toscano's testimony is unduly prejudicial under Federal Rule of Evidence 403.

In sum, Defense Motion *in Limine* No. 1 on relevance and reliability grounds will be denied, and the court will reserve ruling on that motion as to prejudice grounds such that Defendant may renew his objection at trial if he believes Ms. Toscano's testimony is unduly prejudicial.

**C. Defense Motion *in Limine* No. 2**

In his motion *in limine* No. 2, Defendant seeks to exclude or limit the Government's proposed expert witness testimony of Amy Scarmon.[1] (Doc. No. 247.) Defendant contends that the Government "should not be permitted to offer Child Sexual Abuse Accommodation Syndrome (CSAAS) or comparable behavioral-profile testimony as substantive proof that abuse occurred or that a complaint is credible" and that before "any expert testimony is admitted, the Court should require a written proffer and conduct a hearing outside the jury's presence." (*Id.* at 1.) Defendant further argues that in her testimony, Ms. Scarmon "must not use syndrome terminology, offer behavioral-profile testimony as proof that the allegations are true, apply general propositions to the complainant, or directly or indirectly comment on credibility" such that the jury remains "free to decide whether any delayed reporting occurred and whether the allegations were 'simply fabricated.'" (*Id.* at 2.)

1. Exclusion of CSAAS or Syndrome-Based Testimony

Defendant argues that the court should prohibit Ms. Scarmon from using "labels such as 'CSAAS,' 'Child Sexual Abuse Accommodation Syndrome,' or 'syndrome'" because such labels "present[] a particular danger of suggesting that general behavioral propositions amount to diagnostic evidence of abuse." (Doc. No. 247 at 4.) Defendant cites no cases where the court precludes use of these terms. The Ninth Circuit has permitted use of CSAAS expert testimony in child sexual abuse cases. *See, e.g.*, *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2003) ("[W]e

[1] Defendant erroneously refers to Ms. Scarmon as "Amy Scranton" in the motion *in limine*.

have held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth."). Defendant provides no reason to deviate from that holding here. Accordingly, the court will deny Defense's Motion *in Limine* No. 2 to the extent Defendant requests to exclude CSAAS or syndrome-based testimony.

2. Generalized Characteristics

Defendant argues that, to the extent that the court allows Ms. Scarmon to testify, it should preclude her from testifying "about the facts of this case or about the particular victim[s]" and that her testimony should only concern "general behavioral characteristics based on professional experience." (Doc. No. 247 at 5) (quoting *United States v. Bighead*, 128 F.3d 1329, 1330 (9th Cir. 1997)). Defendant further argues that allowing such general testimony does not permit Ms. Scarmon to testify regarding the credibility of the alleged witnesses, or to opine as to whether sexual abuse occurred in any particular instance. (*Id.* at 6–7.) In its opposition, the Government clarifies that Ms. Scarmon will testify "regarding common victim dynamics, the dynamics surrounding gradual and delayed disclosures, minimization and recantation, counterintuitive victim behavior, and dynamics where a perpetrator occupies a position of trust." (Doc. No. 275 at 2.) The Government also confirms that Ms. Scarmon "has not been provided with very much specific information regarding the details of this case." (*Id.*) The parties therefore agree that Ms. Scarmon's testimony must be limited to general behavioral characteristics based on her professional experience, and that she must not testify with specificity regarding the credibility of the alleged witnesses, or Defendant's guilt in any particular instance. Accordingly, the court will deny Defense's Motion *in Limine* No. 2 as having been rendered moot, without prejudice to Defendant renewing his objection at trial if he believes Ms. Scarmon's testimony exceeds these agreed upon parameters.

3. Reliability

As with Ms. Toscano, Defendant argues that the court should conduct a hearing outside the presence of the jury at which the Government must show, by a preponderance of the evidence, that Ms. Scarmon's proposed testimony is based on sufficient facts and evidence, is based on

reliable methods, and that her testimony reliably applies those methods. (Doc. No. 247 at 3.) As with Ms. Toscano, Defendant does not argue with specificity why Ms. Scarmon's curriculum vitae and expert disclosure (Doc. No. 275-2) are insufficient to establish that reliability. Upon review of those documents, the court finds that the Government has established that Ms. Scarmon's proposed testimony is sufficiently reliable for the court to admit her testimony subject to proof at trial. Thus, the court will deny Defendant's request to conduct a hearing outside the presence of the jury to qualify Ms. Scarmon as an expert witness.

In sum, Defense's Motion *in Limine* No. 2 will be denied.

**D. Defense Motion *in Limine* No. 3**

In his motion *in limine* No. 3, Defendant seeks to exclude the testimony of Dr. Hal Meadows regarding his private accountability discussions with Defendant. (Doc. No. 248.) Dr. Meadows is expected to testify that Defendant and Defendant's wife approached him in 1978 or 1979 regarding Defendant's alleged sexual interest in minor boys and asked Dr. Meadows to pray for Defendant and to help to keep Defendant accountable. (Doc. No. 288 at 2.) Defendant did not admit to any specific act of illicit sexual conduct in those meetings. (*Id.*) It is unclear how many times Defendant met with Dr. Meadows, or at what point those meetings ceased. Defendant argues that Dr. Meadows's testimony should be excluded as his discussions with Defendant were privileged as clergy-communicant confidential communications, or in the alternative, that his testimony should be excluded as impermissible propensity evidence under Federal Rule of Evidence 404(b). (Doc. No. 248 at 3–6.)

In its opposition, the Government argues that Defendant fails to establish that Dr. Meadows and Defendant maintained a clergy-communicant relationship or that their communications were confidential. (Doc. No. 288 at 3–6.) The Government further argues that the communications are otherwise admissible as inextricably intertwined with the charged offenses[2] or as evidence of Defendant's motivation pursuant to Rule 404(b). (*Id.* at 6–7.)

The court need not reach the issue of whether Dr. Meadows's communications with

[2] The Government's inextricably intertwined argument is presented in its motion *in limine* No. 5. (Doc. No. 267.)

Defendant were privileged because it finds that the proffered testimony is inadmissible as either inextricably intertwined evidence or under Rule 404(b).

1. Inextricably Intertwined

The Government argues that Dr. Meadows's testimony is inextricably intertwined with the charged offenses because his conversations with Defendant regarding Defendant's sexual interest in minor boys is "direct evidence of Defendant's state of mind and sexual interest in children, and rebuts the Defendant's potential claim that his interest was purely medical." (Doc. No. 267 at 8.) But to be inextricably intertwined, evidence must be "offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the accused." *United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016) (citation omitted). The Government acknowledges that Defendant never confessed to any illicit sexual act in his conversations with Dr. Meadows. (Doc. No. 288 at 2.) It is unclear how the Government's proffered basis as to why Dr. Meadows's testimony is inextricably intertwined with the charged offenses—that it is probative of "Defendant's state of mind and sexual interest in children"—does anything other than "requir[e] an inference as to the character of the accused." *Loftis*, 843 F. 3d at 1176. Thus, the court finds that Dr. Meadows's testimony is not inextricably intertwined with the charged offenses.

2. Rule 404(b)

Next, the Government contends that Dr. Meadows's testimony is admissible as other act evidence under Federal Rule of Evidence 404(b). (Doc. No. 288 at 7.) Rule 404(b) deems inadmissible evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be permitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). A court may admit evidence under Rule 404(b) if "(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *U.S. v.*

*Vo*, 413 F.3d 1010, 1018 (9th Cir. 2004) (internal citation omitted).

Here, Dr. Meadows's testimony is extremely remote in time, as the initial conversations took place approximately twenty years before the first charged offense (albeit it is unclear whether, and for how long, the conversations continued). The testimony is also dissimilar to the charged offenses as Defendant described only his mental state, not any specific act of illicit sexual conduct, to Dr. Meadows. Further, his testimony is not based upon substantial evidence, because, as Defendant notes, Dr. Meadows "identifies no prior sexual offense, no victim, and no conduct similar to a charged offense," and "does not recall an admission of past abuse." (Doc. No. 248 at 5.)

The court finds persuasive Defendant's reliance on *United States v. Preston*, 873 F.3d 829 (9th Cir. 2017). In *Preston*, the trial court admitted the testimony of the defendant's ex-wife in a child sexual abuse case. *Preston*, 873 F.3d at 839. The ex-wife testified that "five years after [the defendant] allegedly abused [the victim], she witnessed [the defendant] masturbating while looking at a computer image of his eight-year-old stepson clothed in socks and underwear." *Id.* The trial court found that this evidence was admissible under Rule 404(b) to show the defendant's intent to sexually assault the minor victims. *Id.* The Ninth Circuit reversed, holding that the district court did "not adequately explain or discuss how the act of masturbating to a picture of a boy in underwear—a non-criminal act—is similar to the crime of real-life sexual abuse of a child." *Id.* at 841. As in *Preston*, the Government seeks to admit evidence of Defendant's alleged general sexual interest in young boys through Dr. Meadows's testimony, not any specific act of illicit sexual conduct. Further, Dr. Meadows's testimony is even more attenuated than the evidence in *Preston* because the conversation took place two decades before the first charged conduct, and because Dr. Meadows's testimony lacks the specificity of the evidence in *Preston*.

Accordingly, the court finds that Dr. Meadows's testimony is not admissible as either being inextricably intertwined with the charged offenses or as permissible motive evidence under Rule 404(b). The court will grant Defendant's motion *in limine* No. 3.[3]

[3] Because the court will exclude Dr. Meadows's testimony, it will deny Defendant's request to require the Government to disclose all material bearing on Dr. Meadows's potential bias as

**E. Defense Motion in Limine No. 4**

In his motion *in limine* No. 4, Defendant seeks to exclude evidence, testimony, and argument concerning Minor Victim No. 2's hernia condition, and Defendant's alleged misdiagnosis of that condition as hydrocele.[4] (Doc. No. 250 at 1.) Defendant also contends that Minor Victim No. 2 cannot testify as to any alleged misdiagnosis as a lay witness, and that testimony regarding his alleged misdiagnosis is inadmissible as unduly prejudicial under Federal Rule of Evidence 403. (*Id.* at 3–5.)

The Government contends that evidence of the alleged misdiagnosis is admissible as inextricably intertwined with the charged conduct. (Doc. No. 284 at 4.) Specifically, the Government alleges that Defendant misdiagnosed Minor Victim No. 2 with a hydrocele during a medical examination that fell outside the standard of care. (*Id.*) The Government further alleges that Defendant used this misdiagnosis as pretext for continued medical treatment to Minor Victim No. 2, during which Defendant touched Minor Victim No. 2's genitals and digitally penetrated his anus. (*Id.* at 4–5.) Thus, the Government argues the "misdiagnosed hydrocele provided the medical cover that Defendant needed to commit the abuse" against Minor Victim No. 2. (*Id.* at 5.)

The parties agree that evidence is inextricably intertwined with a charged offense when it "constitutes a part of the transaction that serves as the basis for the criminal charge" or when it is "necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crimes." (Doc. Nos. 250 at 2; 284 at 4) (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995)). Here, Minor Victim No. 2's testimony regarding the alleged misdiagnosis both constitutes a part of the transaction serving the basis for the criminal charge and is necessary for Minor Victim No. 2 to coherently explain the circumstances under which Defendant examined his genitals. The court therefore finds that evidence regarding the alleged misdiagnosis is admissible as inextricably intertwined with the charged offenses. Defendant's request to exclude this evidence will be denied.

---

having been rendered moot by this order.

[4] Minor Victim No. 2 is the victim named in the superseding indictment in counts three and four.

As to Defendant's argument that Minor Victim No. 2 cannot testify regarding his medical diagnosis as a lay witness, the Government contends that Minor Victim No. 2 will simply "describe symptoms observed, statements heard, and treatments received" in his testimony. (Doc. No. 284 at 6.) Specifically, the Government asserts that Minor Victim No. 2 will testify as to "his communications with Defendant about the diagnosis, and the fact that when he entered the Army [after Defendant's alleged abuse] he was diagnosed with a hernia and underwent hernia surgery, which then resolved the swelling and pain." (*Id.*) The Government further clarifies that, to the extent expert witness testimony is needed to assist the jury in understanding the differing presentations of a hernia and a hydrocele or how Defendant's examinations allegedly fell outside the medical standard of care, Ms. Toscano will testify as to those matters, as discussed above. (*Id.*) Thus, the parties agree that Minor Victim No. 2's testimony regarding his encounters with Defendant, and his resulting diagnosis, must be limited to his personal observations and that he cannot present expert witness testimony regarding medical care.

Accordingly, the court will deny as moot Defense's Motion *in Limine* No. 4 on the grounds of improper lay witness testimony, without prejudice to Defendant objecting at trial if he believes Minor Victim No. 2's testimony exceeds these parameters at trial.

Finally, as to Defendant's argument that Minor Victim No. 2's testimony regarding the alleged misdiagnosis will be unduly prejudicial under Rule 403, the court will be better equipped to determine whether, and the extent to which, his testimony "encourag[es] the jury to treat an assertedly deficient medical judgment as evidence of dishonesty, bad character, or criminal propensity" at trial. (Doc. No. 301 at 5.) Thus, the court will reserve ruling as to whether Minor Victim No. 2's proffered testimony is unduly prejudicial under Federal Rule of Evidence 403.

In sum, the court will deny Defendant's motion *in limine* to exclude Minor Victim No. 2's testimony, subject to the Government establishing sufficient foundation for that testimony at trial. This denial is without prejudice to Defendant renewing his objection at trial if he believes Minor Victim No. 2's specific testimony is unduly prejudicial under Rule 403.

**F. Defense Motion *in Limine* No. 7**

In Defendant's motion *in limine* No. 7, Defendant seeks to exclude reference to his

custodial status at trial, including by: (1) prohibiting visible restraints in the jury's presence; (2) prohibiting Defendant from appearing before the jury in identifiable jail or prison clothing; (3) precluding counsel and witnesses from referring to Defendant's custodial status; (4) requiring the government to instruct its witnesses not to volunteer such information; and (5) providing for an immediate curative instruction if an inadvertent reference or observation occurs. (Doc. No. 253 at 2.) The Government does not oppose the majority of these requests, except to clarify that it intends to introduce evidence obtained from Defendant's person at the time of his arrest. (Doc. No. 281 at 1–2.) The Government further indicates it reserves the right to introduce evidence of Defendant's custodial status if Defendant opens the door at trial. (*Id.* at 2.)

The court will grant Defendant's motion *in limine* No. 7 as follows. As to Defendant's request that he not be seen in visible restraints before the jury, Defendant's current restraint status is legs only. (*See* Doc. No. 9.) Defendant shall be subject to these leg restraints during transport, outside the presence of the jury. Further, considering Defendant's medical limitations and the duration of trial, the court will permit Defendant to be unrestrained at trial, subject to Defendant's behavior and court security officers' needs. As to Defendant's request that he not appear before the jury in identifiable jail or prison clothing, Defendant shall be permitted to provide his own civilian clothing for trial, subject to courthouse security personnel searching that clothing as is standard practice for safety related purposes. As to references at trial to Defendant's custodial status, both parties are ordered to refrain from referring to Defendant's custodial status at trial and shall instruct their witnesses to do the same. The parties shall include with their proposed jury instructions a proposed curative instruction to be provided to the jury should an inadvertent reference to custodial status occur, and the parties shall request that that curative instruction be issued at trial if such inadvertent reference occurs. Finally, should either party believe it necessary to refer to Defendant's custodial status for reasons not currently contemplated, that party shall seek leave of the court outside the presence of the jury before doing so.

### G. Defense Motion *in Limine* No. 8

In Defendant's motion *in limine* No. 8, Defendant seeks to exclude testimony from all witnesses included in the Government's Federal Rules of Evidence 413 and 414 disclosure. (Doc.

No. 254.) Specifically, Defendant seeks to exclude testimony from uncharged Minor Victim Nos. 5, 6, 18, 71, 124, 125, and 171 regarding Defendant's alleged illicit sexual conduct with them. (*Id.* at 2.) Defendant additionally requests that, to the extent the court is inclined to admit the testimony of these uncharged victims, it require the Government to demonstrate admissibility outside the presence of the jury pursuant to Federal Rule of Evidence 104(b). (*Id.* at 4.)

Federal Rule of Evidence 413 allows the court "in a criminal case in which a defendant is accused of a sexual assault," to "admit evidence that the defendant committed any other sexual assault" to be "considered on any matter to which [the evidence] is relevant." Fed. R. Civ. P. 413(a). Federal Rule of Evidence 414 allows the court "in a criminal case in which a defendant is accused of child molestation" to "admit evidence that the defendant committed any other child molestation" to be "considered on any matter to which it is relevant." Fed. R Civ. P. 414(a). Rules 413 and 414 "reverse th[e] traditional rule" that propensity evidence is inadmissible under Federal Rule of Evidence 404(b) and "create a presumption in favor [of] admission for highly prejudicial evidence." *U.S. v. Lemay*, 260 F.3d 1018, 1032 (9th Cir. 2001). Rules 413 and 414, however, do not obviate the need for the trial court to conduct an undue prejudice analysis under Federal Rule of Evidence 403. *Id.* at 1033 (stating that the best way for courts to determine whether evidence is admissible under Rules 413 and 414 "is to conduct the Rule 403 analysis on the record, carefully considering each of the factors, and others as necessary, identified by this court in *Glanzer*"). In *Doe by Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000), the Ninth Circuit established a five factor analysis that courts should conduct when determining whether evidence is admissible under Rule 403: "(1) the similarity of the prior acts charged; (2) the closeness in time of the prior acts to the acts charged; (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances; and (5) the necessity of the evidence beyond the testimonies already offered at trial." *LeMay*, 260 F.3d at 1032 (quoting *Glanzer*, 232 F.3d at 1268) (citation modified).

Upon review of the Government's notice to Defendant regarding its intent to introduce evidence under Rules 413 and 414, the court determines that the testimony of Victim No. 125 would be unduly prejudicial under Rule 403 and will therefore grant Defendant's motion as to that victim. Specifically, Defendant allegedly abused Victim No. 125 "on at least three specific

times in 1976 or 1977." (Doc. No. 292 at 8.) The Government contends that "the three incidents show that the sexual assault was not an aberrant act." (*Id.* at 9.) The Government further contends that Victim No. 125's evidence "is also admissible to show knowledge, absence of mistake, and consciousness of guilt." (*Id.*) Applying the *Glanzer* factors to this proffered evidence, the court finds that the probative value of admitting that testimony is substantially outweighed by the danger of unfair prejudice and of needlessly presenting cumulative evidence. Specifically, while the alleged abuse is substantially similar to that described in the indictment, it occurred approximately twenty years before the first charged offense. The Government does not cite any authority stating that prior acts taking place two decades before the first charged offense are properly admitted under Rules 413 and 414. The Government was unable to name such authority when requested by the court at the hearing on the motions *in limine*. Further, the Government does not explain what additional information would be elicited from Victim No. 125's testimony that cannot be elicited through the testimony of the numerous other alleged victims, whose alleged assaults occurred much more recently than the alleged assaults on Victim No. 125. Accordingly, the court will grant Defendant's motion *in limine* No. 8 as to excluding the testimony of Victim No. 125.

As to the remaining victims, the court does not have sufficient information at this juncture to determine whether their testimony is properly excluded under Rule 403. The court will be better equipped to make such a determination with additional context provided at trial. This approach was explicitly approved by the Ninth Circuit in *LeMay*. *See LeMay*, 260 F.3d at 1028 (finding that the trial court properly reserved ruling on Rule 414 evidence "until after the prosecution had introduced all its other evidence, in order to get a feel for the evidence as it developed at trial" and "[a]fter hearing the opening statements and the prosecutor's case," such that the judge could "conclude that the prior molestations were relevant to bolster the credibility of the [charged victims], and to rebut the suggestion that there was no evidence to corroborate their testimony").

As to Defendant's argument that the court must conduct a pre-trial hearing at which the court must review all specific materials the Government intends to introduce at trial, including

"witness statements, recordings, reports, communications, or exhibits," before determining whether they will be admitted under Rules 413 and 414, the court will decline that request. The court finds Defendant's reliance on *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc) to support its request to be unavailing. In *Curtin*, the Ninth Circuit determined that the trial court improperly admitted short stories found on the defendant's person relating to child sexual abuse without reviewing the stories where the short stories included "graphic description of . . . sexual acts of mutual copulation with, and masturbation of, a dog," an act that the defendant was not alleged to have engaged in. *Curtin*, 489 F.3d at 957. The court in *Curtin* found that such a "troubling circumstance raises a question primarily of procedure or process rather than substance" regarding whether the court "was required to have read every word of these stories when exercising its balancing discretion pursuant to Rule 403." *Id.*

Here, unlike in *Curtin*, the Government seeks to introduce direct testimony from the uncharged victims, not documentary evidence. Thus, unlike in *Curtin*, here the court will be equipped to address Defendant's objections as to the potential prejudicial effect of any victim statement in real time, without presenting evidence to the jury it has not reviewed or considered. When asked at the hearing why the differentiation between direct testimony and documentary evidence should not control, Defendant declined to respond to the court's question.

Accordingly, the court will grant Defendant's motion to exclude Victim No. 125's testimony and will reserve ruling on Defendant's motion *in limine* No. 8 as to the remaining Rule 413 and 414 evidence.[5] To the extent such evidence is introduced at trial, defendant may request an appropriate limiting instruction, which the Government concedes is proper. (*See* Doc. No. 292 at 14.)

**H. Defense Motion *in Limine* No. 9**

In Defendant's motion *in limine* No. 9, Defendant seeks an order excluding "evidence, testimony, exhibits, or argument concerning the Wilderness Medical Society (WMS), including

---

[5] The Government's motion *in limine* No. 4 seeks an order admitting this same evidence. (Doc. No. 259.) Accordingly, the court will deny Government motion *in limine* No. 4 as having been rendered moot by this order.

any alleged membership, participation, activities, affiliation, logo, insignia, branding, or related material." (Doc. No. 255 at 1.) Defendant contends that the "Government has not identified a material issue that WMS membership, participation, branding, or a logo would prove," such that "there is no rational connection between the proposed evidence and the charged conduct" other than improper inference regarding Defendant's character. (*Id.* at 3.)

In its opposition, the Government argues that evidence regarding WMS is relevant and admissible because Defendant allegedly documented his physical examinations of the alleged victims on "medical records with the [WMS] logo and branding" despite having no affiliation with WMS, and despite WMS not offering its services to minors. (Doc. No. 290 at 2–3.) Thus, the Government argues that evidence regarding WMS is inextricably intertwined with the narrative of the charged victims whose allegedly pretextual medical examinations were documented on WMS forms fabricated by Defendant. (*Id.* at 4.)

The court does not have sufficient information at this juncture to determine whether, and to what extent, evidence regarding WMS is probative as to the charged offenses or would be unduly prejudicial under Rule 403. Accordingly, the court will reserve ruling on Defendant's motion *in limine* No. 9 and whether such evidence may be admitted for trial.

**I. Defense Motion *in Limine* No. 11**

In Defendant's motion *in limine* No. 11, Defendant seeks to exclude evidence of Defendant's "alleged sexual interests, uncharged conduct, personal relationships, mental-health or personality characteristics, religious or organizational associations, personal beliefs, or other lifestyle evidence." (Doc. No. 257 at 1.) In its opposition, the Government argues that the motion "presents no trial context or information from which the Court can pre-determine whether argument or evidence is admissible or proper" and therefore constitutes a "follow the law" motion. (Doc. No. 285 at 1–2.)

The only specific pieces of evidence addressed in Defendant's motion are the trial testimony of Dr. Hal Meadows, which was independently resolved through Defendant's motion *in limine* No. 3, and evidence regarding uncharged conduct involving Defendants' family members, which was independently resolved through Defendant's motion *in limine* Nos. 5 and 6.

Accordingly, the court will deny Defendant's request to exclude that evidence as having been rendered moot by the court's order on those motions *in limine.*

As to the remaining requests, the court agrees with the Government that they are not directed with specificity toward any particular evidence, and therefore the court cannot make an informed ruling on those requests at this time. Accordingly, the court will reserve ruling on the remainder of Defendant's motion *in limine* No. 11; Defendant may raise an objection at trial if he believes the Government is seeking to admit impermissible evidence regarding Defendant's interests.

**J. Defense Motion *in Limine* No. 14**

In Defendant's Motion *in Limine* No. 14, Defendant seeks an order prohibiting the government or its witnesses from: (1) mentioning Defendant's potential punishment without seeking the court's leave; (2) referring to or disclosing the forfeiture allegation or its potential consequences without seeking the court's leave; and (3) providing a copy of the indictment to the jury without first redacting forfeiture allegations and penalty provisions. (Doc. No. 264 at 5–6.) In its opposition, the Government agrees that no party should refer to Defendant's potential punishments or the forfeiture allegations and recommends reserving ruling on the redaction of the indictment as the Government hopes to agree upon a joint statement of the case with Defendant such that the jury need not be provided with a copy of the indictment. (Doc. No. 282 at 1–2.) The Government further indicates that it consents to the court resolving forfeiture and does not request that the jury be retained for that determination pursuant to Federal Rule of Criminal Procedure 32.5(5)(A). (*Id.* at 1 n.1.) In his reply, Defendant waives his right to have a jury determine forfeiture and agrees that the court may resolve that issue. (Doc. No. 313 at 2–3.) Defendant further agrees that the parties will likely be able to agree upon a joint statement to provide to the jury but argues the court should still require any version of the superseding indictment provided to the jury to be redacted. (*Id.* at 3.)

The court will reserve ruling on Defendant's motion *in limine* No. 14 until the parties provide their joint statement, and Defendant may raise an objection at trial if he believes the Government seeks to introduce evidence regarding Defendant's potential punishment or forfeiture

allegations.

**K. Defense Motion *in Limine* No. 15**

In Defendant's Motion *in Limine* No. 15, Defendant seeks an order precluding the parties and witnesses from using high-numbered numerical identifiers to refer to alleged victims at trial. (Doc. No. 265 at 1.) Defendant emphasizes that the identifiers used throughout the course of litigation thus far number in the hundreds, such that, if alternative identifiers are not used, the jury will infer the existence of hundreds of other alleged complainants not addressed at trial. (*Id.* at 2.) In its opposition, the Government indicates that the parties reached a stipulation whereby, at trial, the victims' names will not be anonymized, but "the final transcript shall be redacted" such that "any inadvertent identifiers are not present in the public-facing transcript." (Doc. No. 283 at 2.) Defendant confirms this stipulation in his reply. (Doc. No. 314.)

While the court agrees that it would be unduly prejudicial to refer to hundreds of victims before the jury and will not permit that approach to govern at trial, it has concerns about the parties' stipulation. Specifically, the parties indicate that victims shall be referred to by name at trial, then their names would subsequently be redacted in the record of that public proceeding. This creates an untenable result where a member of the public, or the press, present for trial would learn the victims' identities and could disseminate those identities freely, but a member of the public or press reviewing transcripts of that public trial would not have access to such information. Indeed, numerous courts within the Ninth Circuit have found that courts do not have the ability to make private what has already been made public. *See TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. 09-cv-01531-PHX-JAT, 2012 WL 1432519, at *7 (D. Ariz. Apr. 25, 2012) (denying request to seal transcript of public court proceedings because the information disclosed at that proceeding "became public when the parties placed it on the record in open court, and it will remain public"); *In re Google Inc. Gmail Litig.*, No. 13-md-02340-LHK, 2014 WL 10537440, at *6 (N.D. Cal. Aug. 6, 2014) ("Where, as here, the parties did not request closure of the courtroom. . . and the disclosures were not inadvertent, the court will not permit an ex post facto redaction of statements made in open court.") (citation modified); *In re Bard IVC Filters Prods. Liab. Litig.*, No. 16-cv-00474-PHX-DGC, 2018 WL 3725729, at *1 (D. Ariz. Aug.

3, 2018) (collecting cases).

Thus, the court will grant Defendant's request to exclude the victim identifiers used by the parties in litigation thus far but will reserve ruling on the remainder of motion *in limine* No. 15, including the parties' proposed stipulation. Should the parties agree upon an alternative stipulation to maintain victim anonymity while not seeking to make private that which has already been made public, they are directed to file that stipulation with the court by no later than one week from the issuance of this order.

**L. Defense Motion *in Limine* No. 17**

In Defendant's motion *in limine* No. 17, Defendant seeks an order excluding testimony from uncharged Victim No. 5, or in the alternative precluding Victim No. 5 from identifying Defendant's behavior as "grooming." (Doc. No. 268.)

As to excluding Victim No. 5's testimony, the court indicated that it would reserve ruling on this issue in its order regarding Defendant's motion *in limine* No. 8. The court reiterates here that it will be better equipped to determine the probative value and potential prejudice of Victim No. 5's testimony at trial.

As to Defendant's request that the court preclude Victim No. 5 from referring to "grooming" in his testimony, the Government indicates that it "intends to call an expert witness to testify about grooming" and that, to the extent Victim No. 5 testifies regarding grooming, it will be in relation to a training that discussed grooming where "he made connections to the behavior Defendant exhibited toward him." (Doc. No. 291 at 7.) The Government explains that such "testimony would be limited to explain why Victim #5 elected to report when he ultimately reported [the alleged abuse], and to help explain why he reported." (*Id.*) In his reply, Defendant agrees that Victim No. 5 may testify about "the fact that [he] attended a training, and the timing of his report," but that he should "not be permitted to characterize Defendant as having 'groomed' him," or otherwise characterize Defendant's behavior as grooming. (Doc. No. 316 at 4–5.)

Both parties thus agree that Federal Rule of Evidence 701 permits Victim No. 5 to testify regarding grooming only to the extent that his opinion is rationally based on his perception, is helpful for the jury to understand his testimony or to determine a fact in issue, and is not based on

scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. The court will be better equipped to determine whether Victim No. 5's testimony, should he testify, exceeds those parameters at trial. Accordingly, the court will reserve ruling on Defendant's motion *in limine* No. 17.

**M. Government Motion *in Limine* No. 5**

In Government motion *in limine* No. 5, the Government seeks to admit evidence of the charged victims' alleged experiences with Defendant, including alleged sexually illicit conduct, even though that conduct is not directly alleged in the operative superseding indictment, on the ground that that evidence is inextricably intertwined with the charged conduct. (Doc. No. 267 at 2–3.) Defendant does not address the charged victims' uncharged experiences in his opposition. (Doc. No. 274.) The court will reserve ruling on testimony relating to the charged victims' uncharged experiences with Defendant such that Defendant may object to the admission of any evidence at trial that he contends is inadmissible under the Federal Rules of Evidence.

In addition, the Government seeks to introduce under Federal Rule of Evidence 404(b) the following evidence: (1) evidence regarding Dr. Meadows's counseling of Defendant for Defendant's alleged sexual interest in young boys; (2) evidence of Minor Victim No. 2's allegedly misdiagnosed hernia; (3) evidence of a 2006 law enforcement investigation resulting from Minor Victim No. 124's report of his abuse to local police officers; (4) Defendant's alleged use of Wilderness Medical Society documents to claim legitimacy for allegedly abusive medical examinations; and (5) testimony of uncharged Minor Victim No. 71. (Doc. No. 267 at 3–4.) These categories of evidence were resolved in Defendants' motions *in limine*. Thus, the court will deny the remainder of the Government's motion *in limine* No. 5 as having been rendered moot by this order.

**N. Defendant's Motion for Reconsideration**

In Defendant's motion for reconsideration, Defendant requests an order confirming that: (1) the court did not deny Defendant's pending motions *in limine* in its minute order taking those motions under submission (Doc. No. 326); (2) those pending motions *in limine* remain submitted for motion-specific decisions on the existing record; (3) submission created no adverse admission

or waiver on the merits; and (4) if the court concludes that a particular question cannot be resolved from the briefing, the court will permit a supplemental response. (Doc. No. 328 at 2.)

Eastern District Local Rule 430.1(i) requires that, where a party seeks reconsideration of "any motion [that] has been granted or denied in whole or in part," the party must set forth "the material facts and circumstances surrounding each motion for which reconsideration is sought," including "what new or different facts or circumstances are claimed to exist that did not exist or were not shown upon such prior motion or what other grounds exist for the motion." L.R. 430.1(i)(3). Here, to the extent that the motion is not rendered moot by this order, it seeks reconsideration of an order taking Defendant's pending motions under submission, not a "motion [that] has been granted or denied in whole or in part" as required by the local rules. Therefore, the motion is improper and denied on that basis.

Even if the court considered the motion, it fails to provide any new or different facts or circumstances or other grounds to justify reconsideration of the September 9, 2026 minute order. On September 4, 2026, the court held a hearing on the parties' motions *in limine*. (*See* Doc. Nos. 325, 326.) At the hearing, defense counsel refused to answer the court's legal and factual questions relating to all motions *in limine*, including Defendant's motions. Where those issues could not be resolved on the parties' briefs, and without the benefit of clarification at the hearing by Defendant as the moving party, Defendant did not meet his burden on those motions. As a result, those issues were resolved in the Government's favor, as noted in the September 9, 2026 minute order. (Doc. 326.)

Defendant, without citing any new or different fact or circumstance to support his motion for reconsideration, now requests that "if the Cout concludes that a particular question cannot be resolved from the briefing, the Court [] permit a focused supplemental response." (Doc. No. 328.) That is, in fact, exactly what the court requested of Defendant at the September 4, 2026 hearing, and the defense unequivocally refused to respond. A second bite at the apple is unwarranted on these facts. For all these reasons, the motion for reconsideration is denied.

/////

/////

## CONCLUSION

For the reasons explained above:

1. Defendant's motion *in limine* No. 1 (Doc. No. 246) is DENIED in part to the extent explained above;
2. Defendant's motion *in limine* No. 2 (Doc. No. 247) is DENIED in part to the extent explained above;
3. Defendant's motion *in limine* No. 3 (Doc. No. 248) is GRANTED;
4. Defendant's motion *in limine* No. 4 (Doc. No. 250) is DENIED in part to the extent explained above;
5. Defendant's motion *in limine* No. 7 (Doc. No. 253) is GRANTED;
6. Defendant's motion *in limine* No. 8 (Doc. No. 254) is GRANTED in part to the extent explained above;
7. The court RESERVES RULING on Defendant's motion *in limine* No. 9 (Doc. No. 255);
8. The court RESERVES RULING on Defendant's motion *in limine* No. 11 (Doc. No. 257);
9. The court RESERVES RULING on Defendant's motion *in limine* No. 14 (Doc. No. 264);
10. Defendant's motion *in limine* No. 15 (Doc. No. 265) is GRANTED in part to the extent explained above;
    a. If the parties reach an alternative stipulation to maintain victim anonymity while not seeking to make private that which has already been made public, any such stipulation shall be filed by no later than one week after issuance of this order;
11. The court RESERVES RULING on Defendant's motion *in limine* No. 17 (Doc. No. 268);
12. The Government's motion *in limine* No. 4 (Doc. No. 259) is DENIED as having been rendered moot by this order;

13. The court will RESERVE RULING on the Government's motion *in limine* No. 5 (Doc. No. 267); and

14. Defendant's motion for reconsideration (Doc. No. 328) is DENIED.

IT IS SO ORDERED.

Dated: **September 29, 2026**

Dena Coggins
United States District Judge